IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **JEFFREY DAVIS, on Behalf of Himself** | § | |
| **and All Others Similarly Situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 3:17-CV-03236-G** |
| | § | |
| **CAPITAL ONE HOME LOANS LLC and** | § | |
| **CAPITAL ONE NATIONAL** | § | |
| **ASSOCIATION,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' OBJECTIONS TO AND MOTION TO STRIKE PLAINTIFF'S EVIDENTIARY DECLARATIONS

Defendants Capital One Home Loans LLC ("COHL") and Capital One National Association ("Capital One, N.A." or "Capital One") (collectively, "Defendants") hereby object to and move to strike from the record the sworn statements submitted by Plaintiff Jeffrey Davis ("Plaintiff") as Exhibits C through M in support of his *Motion for Notice and FLSA Conditional Certification*.  In support of their objections and motion, Defendants respectfully show the Court as follows.

### I.        Summary of Relevant Facts and Procedural History

Plaintiff filed this lawsuit against Defendants on November 28, 2017, alleging violations of the federal Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* ("FLSA") and purporting to do so on behalf of a proposed class of "similarly situated" loan officers.  Defendants answered Plaintiff's Complaint and denied any violations of the FLSA.  On February 23, 2018 Plaintiff filed his *Motion for Notice and FLSA Conditional Certification and Brief in Support* (hereinafter, Plaintiff's "Motion"), seeking conditional certification of this lawsuit as a collective action.

1

Attached to Plaintiff's Motion are eleven declarations, each titled "Sworn Statement," signed by Plaintiff himself and by former Capital One employees Kane North, Cindy Tuttle, Chris Lunn, Scott Morrison, Tony Munoz, John Oaks, Anita Johnson, Eric Abner, Brian Roblyer, and Eli De Los Santos.  As shown below, those declarations are not proper evidence, and should not be considered by this Court.  Each of them is substantially identical in content, vague, speculative, conclusory, and—most damning of all—each is cut and pasted word-for-word not only between the eleven declarants in this lawsuit, but from declarations submitted by Plaintiff's counsel in *other* FLSA lawsuits against different defendants.  The cut-and-pasted content of these identical declarations not only lacks basic credibility, but also demonstrates a lack of personal knowledge by each declarant, and fails to meet even the less-stringent standard of proof required for plaintiffs seeking conditional certification under 29 U.S.C. § 216(b).

For these reasons, and as explained in detail below, Plaintiff's declarations are not proper evidence, and Defendants therefore object to and move to strike each of them from the record.

## II.      Argument and Authorities

### A.      Plaintiff's Burden to Offer Admissible Evidence at the Conditional Certification Stage

As explained in Defendants' *Response to Plaintiff's Motion for Notice and FLSA Conditional Certification and Brief in Support* (Defendants' "Response"), Plaintiff bears the burden of proving that conditional certification pursuant to 29 U.S.C. § 216(b) is appropriate. As of today, the Fifth Circuit has not yet adopted or endorsed one specific test for courts to use when deciding the propriety of conditional certification. As a result, some courts within this district have followed the two-stage test set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), which contains an initial "notice" stage followed by a later "decertification" stage after discovery has been conducted. *See e.g.*, *Songer v. Dillon Resources, Inc.*, 569 F.Supp.2d 703, 706 (N.D. Tex.

2

2008). At the same time, others have followed the so-called "spurious class action" approach set forth in *Shushan v. University of Colo.*, 132 F.R.D. 263 (D. Colo. 1990). *See e.g.*, *Lentz v. Spanky's Restaurant II, Inc.*, 491 F.Supp.2d 663, 668-69 (N.D. Tex. 2007). In his Motion, Plaintiff urges this Court to follow the *Lusardi* approach, *see* Motion at 7-8, and fn. 2, and Defendants are aware that the Court has followed that approach in at least one other FLSA case. *See e.g. Ryan v. Staff Care, Inc.*, 497 F.Supp.2d 820 (N.D. Tex. 2007)(Fish, J.).

Regardless which approach the Court follows, Plaintiff always "bear[s] the burden of showing there are other employees 'similarly situated'" as a threshold to conditional certification. *Marshall v. Eyemasters of Texas, Ltd.*, 272 F.R.D. 447, 449 (N.D. Tex. 2001). This means that, "if the [legal] action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice," Plaintiff's request for conditional certification and notice should be denied. *Franklin v. HCA Mgmt. Servs., LP.*, 2016 WL 7744407 at *2 (N.D. Tex. Dec. 19, 2016) (quoting *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 288 (N.D. Tex. 2012)). In making that showing, Plaintiff must offer evidence that he possesses actual, personal knowledge that such other employees are similarly situated. *Parker v. Silverleaf Resorts, Inc.*, 2017 WL 1550522 at *7 (N.D. Tex., May 1, 2017); *see also Owen v. Golf & Tennis Pro Shop, Inc.*, 2010 WL 3859640 at *4 (E.D. Tex., Sep. 30, 2010) (declarations not based on personal knowledge do not meet the *Lusardi* standard of proof).

While it may be true that Plaintiff's evidentiary burden at this stage "is not onerous, neither is it invisible." *Songer*, 569 F.Supp.2d at 706.[1] Conditional certification "is by no means mandatory." *Id.* at 705-06. Rather, as the Court explained in *Lentz*, requiring the plaintiff to prove his entitlement to certification and notice is necessary to avoid "stirring up unwarranted litigation"

---

[1] Plaintiff takes great pains to argue the relative lightness of his burden; the word "lenient" appears fifteen times in his Motion.

3

and to protect employers from being "unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses." 491 F.Supp.2d at 669 (internal citations omitted). Thus, in order to obtain conditional certification and notice, "a plaintiff must make a minimal showing that (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist, (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) those individuals want to opt in to the lawsuit." *Crane v. J&M Comms., Inc.*, 2017 WL 2882593 at * 4 (N.D. Tex., July 6, 2017) (quoting *Prater v. Commerce Equities Mgmt. Co., Inc.*, 2007 WL 4146714 (S.D. Tex. Nov. 19, 2017) (internal quotations omitted)).

To meet his burden, Plaintiff must make "a showing of some identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." *Jones v. SuperMedia, Inc.*, 281 F.R.D. 282, 287 (N.D. Tex. 2012). This requires Plaintiff to provide "substantial allegations" that the potential class members were together victims of a "single decision, policy or plan infected by discrimination." *Id.*; *Clark v. City of Fort Worth*, 800 F.Supp.2d 776, 779 (N.D. Tex. 2011). Where, as here, a plaintiff attempts to meet his evidentiary burden through declarations, those declarations cannot be mere "boilerplate" or "virtually identical" ones that "contain primarily conclusory allegations unsupported by any factual assertions demonstrating the basis of the affiants' knowledge." *Songer*, 569 F.Supp.2d at 705-07 (denying plaintiffs' motion for conditional certification). And where, as here, such declarations are offered as evidence of a common policy or practice applicable to all would-be class members, they must "establish that the plaintiff[] ha[s] **personal knowledge of those matters as they pertain to any other**" employee. *Id.* at 707 (emphasis added); *see also Parker*, 2017 WL 1550522 at *7 (limiting scope of conditional certification due to Plaintiff's lack of personal knowledge of whether

4

employees at other locations were "similarly situated").

**B.    Plaintiff's Evidence is Objectionable, and Should Be Stricken**

1.    <u>Plaintiff's Declarations Are Comprised of the Same Identical, Cut-and-Pasted Boilerplate Language, and Not Based on the Declarants' Personal Knowledge</u>

In support of his Motion, Plaintiff offers declarations from eleven individuals.  *See* Motion at Exhibits C-M.  Eight of those declarations contain seventeen paragraphs each; thirteen of those paragraphs are *word-for-word identical*. *See* Motion at Exhs. C-J, ¶¶ 4-17.  The other three declarations each contain thirteen paragraphs; eleven of those paragraphs are *word-for-word identical*.  *See id.* at Exhs. K-M, ¶¶ 3-13.

Specifically, paragraphs 4 through 17 of the seventeen-paragraph declarations at Exhibits C-J contain the following identical language:

4.    My primary duty as a Capital One LO and the primary duty of other Capital One LOs is to sell mortgage products offered by Capital One.

5.    As a Capital One LO, I contacted potential borrowers/customers who may be interested in mortgage products offered by Capital One.  My primary responsibility was to sell mortgage products available through Capital One to the potential borrower/customer when I was speaking with them over the phone, communicating with them via the internet, or meeting with them in my office.

6.    Federal and lending institution guidelines governed the majority of the duties I performed as a Capital One LO. I thus did not exercise discretion or judgment with respect to matters of significance related to my LO job.

7.    I did not supervise two or more employees during my Capital One employment. Further, employment as a Capital One LO does not require a heightened degree of skill, knowledge or expertise, and Capital One does not require a specialized college degree to obtain a LO job.

8.    Until approximately July 2015, Capital One classified LOs as exempt employees not entitled to overtime pay. I am aware of this because neither myself nor any other LO I am aware of received overtime. Additionally, the compensation plan for LOs did not provide for overtime payment.

9.    To my knowledge until July 2015, Capital One paid all LOs under the same or similar basic compensation plan.  This plan paid LOs a salary which was a draw that Capital One offset from any commissions paid to LOs. Capital One paid me a salary under this plan which Capital One then offset from commissions paid me for mortgage loan product sales. Thus, Capital One

essentially paid me on a commission only basis because Capital One deducted any salary compensation from my earned commissions. Capital One called this compensation plan a draw against commission plan.

10. Until approximately July 2015, Capital One never paid overtime to me or the other LOs under Capital One's draw against commission plan because the plan did not provide for overtime payment.

11. In approximately July 2015, Capital One reclassified me and other LOs as non-exempt, hourly employees. My duties as a LO did not change when Capital One reclassified me and the other LOs as non-exempt, hourly employees.

12. In connection with the reclassification, Capital One told me and the other LOs that the same employment and pay policies and procedures applied to all LOs including the same timekeeping policies.

13. After Capital One reclassified me and the other LOs, to my knowledge, all Capital One LOs were paid under the same basic compensation plan which included hourly pay plus commissions.

14. After Capital One reclassified me and the other LOs to non-exempt, hourly employees, management discouraged me from reporting all of my hours so I did not record all of the hours including overtime I worked each week.

15. After Capital One reclassified me and the other LOs to non-exempt, hourly employees, I regularly worked "off the clock" and Capital One did not pay me for this work. My manager knew that I was not fully reporting all of my hours worked.

16. Based upon my experience and observations from working for Capital One, I understand that the other Capital One LOs had the same/similar draw against commission compensation plan as I did, and were subject to the same policies and practices regarding their pay by Capital One, including similarly working "off the clock" and not being paid for all overtime hours worked.

17. I know that other similarly situated current and former Capital One LOs would be interested to learn about their rights and their opportunity to join this lawsuit. Capital One has/had LOs in offices in several states.  I understand that more than 15 Capital One LOs have already opted into this lawsuit.

Likewise, the three thirteen-paragraph declarations attached as Exhibits K-M to Plaintiff's Motion share the identical language from ¶¶ 4, 5, 6, 7, and 17 above, and near-identical language from ¶ 16 above (minus the phrase "draw against commission"), plus the following paragraphs, which are identical in each of the three:

6

8.      Capital One hired me and other LOs as non-exempt, hourly employees. I attended orientation and training when I began my Capital One employment with other LOs. During it, Capital One told me and the other LOs that the same employment and pay policies and procedures applied to all LOs including the same timekeeping policies.

9.      To my knowledge, all Capital One LOs were paid under the same basic compensation plan which included hourly pay plus commissions.

10.     During my Capital One employment, management discouraged me from reporting all of my hours so I did not record all of the hours including overtime I worked each week.

11.     During my Capital One employment, I regularly worked "off the clock" and Capital One did not pay me for this work. My manager knew that I was not fully reporting all of my hours worked.

Exhibits K-M at ¶¶ 8-11. In each of the eleven declarations submitted by Plaintiff, the only substantive differences are the declarants' names, locations, and dates of employment.

The cookie-cutter, cut-and-pasted nature of these eleven declarations amply proves that those declarations do not reflect the personal, individualized knowledge of each individual declarant. Perhaps even more damningly, the facts show that Plaintiff's counsel cut and pasted this cookie-cutter language not only among declarants within this litigation, but from declarants in other, unrelated lawsuits. For example, the named plaintiff's declaration in another recent FLSA lawsuit filed by Plaintiff's counsel, *Kimberly Trietsch v. Caliber Home Loans, Inc.*, Case No. 3:16-cv-00483-N in the Northern District of Texas, also contains language nearly identical to that of the declarations in this case, and copies nearly verbatim the language at ¶¶ 4, 5, 6, 7, 8, 9, 10, and 17 of Exhibits C-J above. *See* Sworn Statement (Kimberly Trietsch), attached as <u>Exhibit A</u> hereto. Likewise, the named plaintiff's declaration in *Elizabeth Zachary v. Cobalt Mortgage*, Case No. 4:16-cv-00754-ALM in the Eastern District of Texas, another recent FLSA lawsuit filed by Plaintiff's counsel, copies nearly verbatim (with only changes made to reflect job title) the language at ¶¶ 4, 5, 8, 9, 10, 11, 16, and 17 of Exhibits K-M above. *See* Sworn Statement (Elizabeth Zachary), attached as <u>Exhibit B</u> hereto.

7

In sum, Plaintiff's counsel has submitted substantially identical declarations, copied and pasted nearly word-for-word, in lawsuits against at least three different banks, representing at least three different named plaintiffs, in at least three different lawsuits.  And the declarations submitted by the eleven declarants in the present lawsuit are, word-for-word, virtually identical to each other. As the Court noted in *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006), the fact that evidentiary standards are somewhat less rigid at the conditional certification stage under the *Lusardi* standard "does not mean that [plaintiff's declarations] need not meet *any* standards" (emphasis added). Plaintiff's declarations do not meet any standards: they are unreliable and impersonal in the extreme, and cannot possibly satisfy even the less-stringent standard of proof set forth in *Lusardi*.  Plaintiff's declarations are therefore inadmissible as evidence, and Defendants respectfully ask this Court to strike them in their entirety.

2.   Plaintiff's Declarations Otherwise Do Not Comply with the Federal Rules of Evidence

In addition to objecting to the general boilerplate nature and untrustworthiness of Plaintiff's declarations in their entirety (as shown above), Defendants also object to and move to strike certain statements contained in each of Plaintiff's unreliable boilerplate declarations, on the following grounds:

| **Paragraph** | **Declarant's Statement** | **Defendants' Objection(s)** |
|---|---|---|
| ¶ 4, all declarations | "My primary duty as a Capital One LO and the primary duty of other Capital One LOs is to sell mortgage products offered by Capital One." | Vague, speculative, and conclusory<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Declarants offer no foundation for having any knowledge of the duties of "other Capital One LOs" besides themselves. Each of |

8

| | | |
|---|---|---|
| | | the declarants was primarily based at a specific Capital One location, and most of the declarants worked either from home offices or client sites, where they did not work with other Capital One LOs. Declarants also offer no foundation for their assertion as to which if any duty of any person constituted that person's "primary duty." |
| ¶ 6, all declarations | "Federal and lending institution guidelines governed the majority of the duties I performed as a Capital One LO. I thus did not exercise discretion or judgment with respect to matters of significance related to my LO job." | Vague, speculative and conclusory<br><br>Legal opinion by lay witness<br><br>Lacks foundation<br><br>Lacks personal knowledge |
| ¶ 7, all declarations | "[E]mployment as a Capital One LO does not require a heightened degree of skill, knowledge, or expertise[.]" | Vague, speculative, and conclusory<br><br>Legal opinion by lay witness<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Declarants offer no factual foundation for their boilerplate assertion regarding the "degree of skill, knowledge, or expertise" required to perform any jobs other than their own individual positions, at their own locations, or during their own dates of employment. Likewise, declarants offer no basis or foundation for their statement regarding what is a "heightened" degree of those traits, and to the extent their |

| | | statement asserts a legal conclusion, their statements offer no basis or foundation for their qualifications to assert such a conclusion. |
|---|---|---|
| ¶ 8, Exhibits C-J | "Until approximately July 2015, Capital One classified LOs as exempt employees not entitled to overtime pay. I am aware of this because neither myself nor any other LO I am aware of received overtime. Additionally, the compensation plan for LOs did not provide for overtime payment." | Vague, speculative, and conclusory<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Best evidence rule<br><br>Declarants' assertion regarding companywide classification of employees is based solely upon his own personal circumstances and his lack of awareness regarding the circumstances of other Loan Officers. Declarants offer no factual basis for extrapolating their personal lack of awareness to mean a companywide lack of overtime pay. Likewise, declarants offer no factual basis for their assertion of knowledge about an alleged "compensation plan for LOs," and cannot therefore competently testify about any compensation plan other than their own. |
| ¶ 9, Exhibits C-J | "To my knowledge until July 2015, Capital One paid all LOs under the same or similar basic compensation plan." | Vague, speculative, and conclusory<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Declarants offer no factual basis or foundation for their alleged "knowledge" about |

| | | how Capital One paid any LO, or what compensation plan applied to any LO, other than themselves (i.e. each declarant alone) personally. |
|---|---|---|
| ¶ 10, Exhibits C-J | "Until approximately July 2015, Capital One never paid overtime to me or the other LOs under Capital One's draw against commission plan because the plan did not provide for overtime payment." | Lacks foundation<br><br>Lacks personal knowledge<br><br>Speculative<br><br>Best evidence rule<br><br>Declarants offer no factual basis or foundation for their assertions regarding whether Capital One "paid overtime to … the other LOs," or to any other person besides each individual declarant him- or herself. Declarants also offer no factual basis or foundation for their assertions that any other Loan Officer besides themselves was paid on the same plan as them (see objection to ¶ 9, above). |
| ¶ 11, Exhibits C-J | "In approximately July 2015, Capital One reclassified me and the other LOs as non-exempt, hourly employees." | Lacks foundation<br><br>Lacks personal knowledge<br><br>Speculative<br><br>Declarants offer no factual basis or foundation for their assertions regarding whether Capital One reclassified any person besides themselves, at any time, or at the time asserted in their declarations. |
| ¶ 12, Exhibits C-J | "In connection with the reclassification, Capital One told me and the other LOs that the same employment and pay policies and | Vague, speculative, conclusory<br><br>Lacks foundation |

11

| | | |
|---|---|---|
| | procedures applied to all LOs including the same timekeeping practices." | Lacks personal knowledge<br><br>Best evidence rule<br><br>Declarants offer no factual basis or foundation for their assertion regarding what Capital One "told … the other LOs" besides themselves individuals.  (Note: to the extent any declarant claims such information was conveyed to him or her by any individual not a party to this litigation, Defendants further object to this assertion as hearsay.)  Additionally, each declarant's assertion regarding "the same employment and pay policies and procedures … including the same timekeeping practices" is entirely vague and conclusory, and fails to identify even a single specific policy, procedure, or practice that allegedly applied to themselves, much less to others. |
| ¶ 13, Exhibits C-J | "After Capital One reclassified me and the other LOs, to my knowledge, all Capital One LOs were paid under the same basic compensation plan which included hourly pay plus commissions." | Vague, speculative, conclusory<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Best evidence rule<br><br>Declarants offer no factual basis or foundation, other than the vague, unsupported qualifier "to my knowledge," (for which they offer no foundation whatsoever) for their assertions regarding whether "other LOs" were |

| | | |
|---|---|---|
| | | "reclassified" or "were paid under the same basic compensation plan[.]" Likewise, declarants offer no explanation or definition of what the qualifier "basic" means in their declarations, and no factual basis or foundation for their comparison or description of any such plan as "basic" (in fact, no declarant offers a copy of any such plan as an exhibit to his or her declaration, thus supporting a best-evidence rule objection under Fed. R. Evid. 1002). |
| ¶ 14, Exhibits C-J | "After Capital One reclassified me and the other LOs to non-exempt hourly employees, management discouraged me from reporting all of my hours so I did not record all of the hours including overtime I worked each week." | Vague, speculative, conclusory<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Assumes facts not in evidence<br><br>Declarants offer no factual basis or foundation for their assertions regarding whether "other LOs" were "reclassified." Likewise, declarants offer no explanation or definition of the term "discouraged," and not even a single factual example of how any manager discouraged any declarant "from reporting all of [his or her] hours[.]" And to the extent declarants purport to offer such statement regarding "management" as opposed to his or her own manager or managers, Defendants further object to |

| | | |
|---|---|---|
| | | the term "management" as vague, undefined, and unclear. |
| ¶ 15, Exhibits C-J | "After Capital One reclassified me and the other LOs to non-exempt, hourly employees, I regularly worked 'off the clock' and Capital One did not pay me for this work. My manager knew that I was not fully reporting all of my hours worked." | Vague, speculative, conclusory<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Assumes facts not in evidence<br><br>Declarants offer no factual basis or foundation for their assertions regarding whether "other LOs" were "reclassified." Likewise, declarants offer no factual basis or foundation for their assertions regarding their individual managers' knowledge regarding their reporting of hours, and therefore this assertion by declarants is purely speculative. |
| ¶ 16, Exhibits C-J | "Based upon my experience and observations from working for Capital One, I understand that the other Capital One LOs had the same/similar draw against commission compensation plan as I did, and were subject to the same policies and practices regarding their pay by Capital One, including similarly working 'off the clock' and not being paid for all overtime hours worked." | Vague, speculative, conclusory<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Best evidence rule<br><br>Declarants offer no factual basis or foundation for their assertions regarding their "experience and observations," or any other foundation from which the Court can plausibly determine whether such "experience and observations" suffice for each declarant to form an opinion, |

| | | apart from mere speculation, about what compensation plan applied to any other LO, what pay policies and practices applied to any other LO, whether any LO "work[ed] 'off the clock'," or whether any LO was "not … paid for all overtime hours worked."  Because no declarant offers any such facts or information to support or quantify their "experience and observations" (e.g., experience with and observations regarding which locations, which other LOs, which policies, which practices, etc., and precisely what facts constitute such "experience"), the Court cannot possibly draw any evidentiary conclusions from such declarations, and their vagueness, conclusoriness, and utter lack of foundation is fatal to each of the assertions therein. |
|---|---|---|
| ¶ 17, all declarations | "I know that other similarly situated current and former Capital One LOs would be interested to learn about their rights and their opportunity to join this lawsuit. Capital One has/had LOs in offices in several states. I understand that more than 15 Capital One LOs have already opted into this lawsuit." | Vague, speculative, conclusory<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Hearsay<br><br>Assumes facts not in evidence<br><br>This statement in each of the eleven declarations is pure, unadulterated, self-serving speculation. No declarant offers any factual basis or |

15

| | | |
|---|---|---|
| | | foundation whatsoever for the assertion of his or her knowledge regarding the interest level of "current and former Capital One LOs" (Note: since Capital One has eliminated these Loan Officer positions, there are no "current … Capital One LOs" within the declarants' definition of that term, and this assertion therefore also assumes facts not in evidence), or for any of the other assertions contained in this paragraph. |
| ¶ 8, Exhibits K-M | "Capital One hired me and other LOs as non-exempt, hourly employees. I attended orientation and training when I began my Capital One employment with other LOs. During it, Capital One told me and the other LOs that the same employment and pay policies and procedures applied to all LOs including the same timekeeping policies." | Vague, speculative, conclusory<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Declarants offer no factual basis or foundation for their assertions regarding Capital One's hiring of other Loan Officers. Declarants assertions regarding the "orientation and training" they attended are far too vague to act as competent evidence any sort of companywide policy or practice (for example, they do not state when or where such alleged "orientation and training" took place, how many other Loan Officers attended, whether such other Loan Officers worked in declarants' work locations or elsewhere, or any other details from which the Court can possibly conclude that Declarants' alleged |

| | | experiences as set forth in this paragraph were shared by other Loan Officers outside their primary location and, if so, the numerosity or identity of such other Loan Officers. |
|---|---|---|
| ¶ 9, Exhibits K-M | "To my knowledge, all Capital One LOs were paid under the same basic compensation plan which included hourly pay plus commissions." | Vague, speculative, conclusory<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Declarants offer no factual basis or foundation for their assertions regarding how any other Capital One Loan Officers were paid, and whether any compensation plan applied to any Capital One Loan Officer other than each individual declarant him- or herself. |
| ¶ 10, Exhibits K-M | "During my Capital One employment, management discouraged me from reporting all my hours so I did not record all of the hours including overtime I worked each week." | Vague, speculative, conclusory<br><br>Lacks foundation<br><br>Declarants offer no explanation or definition of the term "discouraged," and not even a single factual example of how any manager discouraged any declarant "from reporting all of [his or her] hours[.]" And to the extent declarants purport to offer such statement regarding "management" as opposed to his or her own manager or managers, Defendants further object to the term "management" as |

| | | vague, undefined, and unclear. |
|---|---|---|
| ¶ 11, Exhibits K-M | "During my Capital One employment, I regularly worked 'off the clock' and Capital One did not pay me for that work. My manager knew that I was not fully reporting all of my hours worked." | Vague, speculative, conclusory<br><br>Lacks foundation<br><br>Lacks personal knowledge<br><br>Assumes facts not in evidence<br><br>Declarants offer no factual basis or foundation for their assertions regarding their individual managers' knowledge about their reporting of hours, and therefore this assertion by declarants is purely speculative. |

## CONCLUSION

For all the reasons set forth above, Defendants respectfully ask this Court to sustain their objections to the eleven declarations submitted by Plaintiff as Exhibits C through M to his *Motion for Notice and FLSA Conditional Certification*, order that each and all of those declarations be stricken from the record in their entirety and not considered as evidence in support of Plaintiff's motion, and award to Defendants all other evidence the Court deems just and proper.

Respectfully submitted,

By: */s/ Kevin M. Duddlesten*
Kevin M. Duddlesten
Texas Bar No. 00793644
McGuireWoods LLP
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
Telephone: (214) 932-6400
Facsimile: (214) 932-6499
kduddlesten@mcguirewoods.com

W. Joseph Miguez
Texas Bar No. 24037107
McGuireWoods LLP
816 Congress Ave., Suite 940
Austin, Texas 78701
Telephone: (512) 617.4524
Facsimile: (512) 617.4582
jmiguez@mcguirewoods.com

Christopher M. Michalik
Virginia Bar No. 47817*
Elizabeth P. Redpath
Georgia Bar No. 979358*
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone:  (804) 775-4343
Facsimile:  (804) 225-5411
cmichalik@mcguirewoods.com
eredpath@mcguirewoods.com

**ATTORNEYS FOR DEFENDANTS**
**CAPITAL ONE HOME LOANS LLC and**
**CAPITAL ONE NATIONAL ASSOCIATION**

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2018, the foregoing document was duly served in accordance with the provisions of Rule 5 of the Federal Rules of Civil Procedure as follows:

***Electronic Case Filing***
J. Derek Braziel
LEE & BRAZIEL, LLP
1801 N. Lamar Street, Suite 325
Dallas, Texas 7522

***Electronic Case Filing***
Rowdy B. Meeks
ROWDY MEEKS LEGAL GROUP
8201 Mission Road, Suite 250
Prairie Village, Kansas 66208

*/s/ Kevin M. Duddlesten*
Kevin M. Duddlesten