# EXHIBIT 1

# CONFIDENTIAL COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

This Confidential Collective Action Settlement Agreement and Release ("Agreement") is made and entered into by and among, or on the behalf of, the following persons (collectively "Parties"): (i) Capital One Home Loans LLC and Capital One National Association (collectively "Capital One"); (ii) Jeffrey Davis ("Named Plaintiff"); and (iii) all persons who have filed Opt-In forms in the Lawsuit (or estates of such persons) ("Opt-In Plaintiffs"), (Named Plaintiff and Opt-in Plaintiffs, collectively "Plaintiffs"); and is intended to permit and lead to the full, final and complete discharge, settlement, and dismissal with prejudice of the Lawsuit and all claims that were brought by any party in the Lawsuit, upon and subject to the terms and conditions stated herein.

## RECITALS

WHEREAS, on November 28, 2017, the Named Plaintiff filed a putative collective action on behalf of himself and others similarly situated individuals, pursuant to the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") in the United States District Court for the Northern District of Texas, styled *Jeffrey Davis, on Behalf of Himself and All Others Similarly Situated v. Capital One Home Loans LLC and Capital One National Association*, Civil Action No. 3:17-CV-03236-G (the "Lawsuit" or the "Litigation");

WHEREAS, the Opt-In Plaintiffs elected to opt into the Lawsuit;

WHEREAS, Capital One denies that it has committed any wrongdoing or violated any federal, state, or local laws pertaining to payment of wages or hours worked, and further denies that is liable for or owes back wages or any overtime compensations to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, the Parties engaged in mediation of the claims arising from the facts alleged in the Litigation before an experienced wage and hour mediator on February 4, 2020; and

WHEREAS, Capital One and the Plaintiffs (collectively, "Parties") mutually desire to settle all claims arising from the facts alleged in the Lawsuit as well as any other claims they may have against any other party arising out of facts or events, known or unknown, occurring up to and including the date of the execution of this Agreement.

## TERMS OF AGREEMENT

NOW, IN CONSIDERATION of the Parties' action provided for by this Settlement Agreement and Release, and other good and valuable consideration and the promises and covenants contained herein, the receipt and sufficiency of which the Parties acknowledge, the Parties do hereby agree as follows:

1.  The above Recitals are made part of the Settlement Agreement and Release.

2. <u>Court Approval of the Agreement</u>.  Upon execution of the Agreement, the Parties agree to jointly submit to the Court for in camera inspection and approval of the Agreement<u>.</u>

3. <u>Dismissal of the Lawsuit</u>.  Upon the Court's approval of the Agreement and in return for the Settlement Payments detailed in Paragraph 6 and Paragraph 7 of this Agreement and for other good and valuable consideration in this Agreement, Named Plaintiff agrees to dismiss this Lawsuit with prejudice and not to appeal or otherwise challenge that dismissal.

4. <u>No Admission</u>.  Neither this Settlement Agreement and Release nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the settlement constitutes an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of Capital One; nor may it be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Capital One in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.

5. <u>Settlement Payments for FLSA Overtime Claims and Releases</u>.  Upon the Court's approval of the Agreement and dismissal of the Lawsuit and as consideration for the dismissal of the Lawsuit and the release of claims by Plaintiffs, Capital One agrees to pay up to a maximum of Seven Hundred Thousand Dollars ($700,000.00) (the "Gross Fund") to settle the Litigation plus Capital One's share of the required payroll taxes.

Upon execution by counsel for the Parties and submission to the Court of the Agreed Order dismissing this litigation, the Court's approval of this settlement, the Court's entry of its Order dismissing this Litigation in its entirety, and that Dismissal Order becoming binding and non-appealable ("Effective Date"), Capital One shall wire Seven Hundred Thousand Dollars ($700,000.00) to the third party administrator selected by the Parties (the "Administrator") within seven business (7) days of the Dismissal Order becoming binding and non-appealable. The Gross Fund will then be distributed by the Administrator as follows:

   a. <u>Payments to Settlement Collective Members</u>.  No later than seven (7) business days after the Effective Date of this Agreement, Capital One will provide to Plaintiffs' Counsel and the Administrator an electronic Excel spreadsheet listing Plaintiff's and each Opt-In Plaintiff's name, state of employment, last known residential address, last known telephone number, personal e-mail address (if known), and Social Security number. The Administrator will mail settlement notices as shown in Exhibit 2 and settlement checks to Plaintiffs in the amount allocated to each Plaintiff (Named and Opt-In) pursuant to the allocations shown on Exhibit 1 to the Agreement within seven (7) business day of the Administrator's receipt of the Excel spreadsheet.  It is understood 50% of each payment detailed on Exhibit 1 shall be for back wages, and 50% of each payment detailed on Exhibit 1 shall be for non-wage payments (collectively "Settlement Checks").  The Administrator shall report the wage payments to the Internal Revenue Service ("IRS") on IRS Form W-2 and shall report the non-wages payments on IRS Form 1099.

Plaintiffs shall have ninety (90) days to negotiate their Settlement Checks and Releases (the "Acceptance Period").

    b. <u>Service Payment to Named Plaintiff</u>.  Named Plaintiff will receive a service payment in the amount of Twenty Five Thousand Dollars ($25,000.00)(the "Service Payment").  The Service Payment is in recognition of his efforts to pursue the claims raised in the Litigation on behalf of the Op-In Plaintiffs, including providing information, participating in discovery, and otherwise assisting Plaintiffs' Counsel with prosecution of the Litigation.  The Service Payment will be made at the same time and in addition to Named Plaintiff's individual settlement reflected in Exhibit 1 to the Agreement.  The Administrator will issue Named Plaintiff an IRS Form 1099 for the Service Payment.

    c. <u>Settlement Administration Fees and Expenses</u>.  Distribution of the Gross Fund will be administered by a third party administrator, Analytics LLC (the "Administrator").  All administration fees and costs of the Administrator in administering this Settlement Agreement and Release shall be paid from the Gross Fund.  Administrator costs and fees will be Eight Thousand Eight Hundred and Eight One Dollars ($8,881.00).

    d. <u>Payment of Plaintiffs' Attorneys' Fees</u>.  The Administrator will pay from the Gross Fund Plaintiffs' Counsel's litigation costs and attorneys' fees in this Litigation in the amount of $296,653.38.  The Administrator will report the payment to Plaintiffs' Counsel to the IRS on a Form 1099.  The Administrator shall wire this amount to Plaintiffs' Counsel within three (3) business days from the Administrator's receipt of the Gross Fund from Capital One.

    e. <u>Payment Back to Capital One</u>.  If any Opt-In Plaintiff fails to negotiate his or Settlement Check and Release within the Acceptance Period, the portion of the Gross Fund allocated to that Opt-In Plaintiff shall revert back to Capital One.  Within 14 days after expiration of the Acceptance Period, the Administrator shall pay back to Capital One all such amounts, including all accrued interest and investment income earned on all such amounts as part of the Gross Fund.

    f. <u>Employment Taxes</u>.  The Administrator will timely notify Capital One of the amount needed to cover Capital One's portion of FICA withholdings, which Capital One shall wire to the Administrator within three (3) business days.

    g. <u>Indemnification</u>.  The Administrator shall indemnify the Parties for any penalty or interest arising out of an incorrect calculation or the late posit of the payments for taxes detailed in this Paragraph 5.

    h. <u>Reporting by the Administrator</u>.  Throughout the period of claims administration, the Administrator will provide reports to the Parties upon request by either Party regarding the status of the mailing of the Settlement Notices and Settlement Payments or any other aspect of the claims administration process.

6. <u>Releases.</u>

    a.    <u>Release by the Collective Plaintiffs</u>.  In return for the consideration in this Agreement, Plaintiff and the participating Opt-In Plaintiffs by operation of the Release and Acceptance of Settlement Agreement, this Agreement, and the Dismissal Order shall have fully, finally, and forever released, relinquished, and discharged all any and all "Released Claims" against Capital One, its successors, assigns, affiliates, parents, subsidiaries, officers, directors, insurers, reinsurers, partners, principals, managing directors, supervisors, employees and former employees (collectively the "Released Parties") that accrued during their employment with Capital One relating back to the fullest extent of any applicable federal, state and/or local statutes of limitations and continuing through the date of the negotiation of their respective Settlement Checks or of receipt of an EFT payment for the amount thereof.  The "Released Claims" include: all federal, state and local minimum wage, hour, and overtime violation claims of any type, including without limitation for liquidated damages, claims for any type of meal or rest break violations, inaccurate wage statements, unpaid vacation or sick pay or other paid time off wages of any type and related notice violations, derivative claims for unfair competition/business practices and statutory and civil penalties.

All Settlement Checks shall contain on the back of the check (or if there is insufficient space on the back of the check, elsewhere on the check or check stub as determined by the Parties and the Administrator), the following limited endorsement: "As more fully described in the Settlement Notice, I waive, release, and forever discharge any claim I have or may have through [INSERT EFFECTIVE DATE] against Capital One Home Loans LLC, Capital One National Association, and the Released Parties for all claims under the Fair Labor Standards Act and state and local wage and hour laws as described more fully in the Settlement Notice.

    b.    Upon the Dismissal Date, the Named Plaintiff shall be deemed to have and by operation of the Dismissal Order shall have, fully, finally, and forever released, relinquished and discharged his claims in the Lawsuit.  The Named Plaintiff also releases, waives, acquits and forever discharges Capital One, its successors, assigns, affiliates, parents, subsidiaries, officers, directors, partners, principals, managing directors, supervisors, employees and former employees from any and all actions, causes of action, claims, demands, costs, loss of service, expenses, compensation and any damages of any kind whatsoever, whether known or unknown, liquidated or unliquidated, which he has and which he may have arising up to and including the date of execution of this Settlement Agreement and Release, including, without limitation, claims or causes of action regarding his employment with Capital One, any claims of employment discrimination, breach of express or implied contract, fraud, misrepresentation, defamation, emotional distress, invasion of privacy, computer crimes, impairment of economic opportunity, or other tort, any claims for punitive or compensatory damages, claims of any kind that may be brought in any court or administrative agency, any claims under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, as amended, the Employee Retirement Income Security Act, as amended, the Occupational

Health and Safety Act, as amended, the Family and Medical Leave Act, as amended, the Rehabilitation Act, as amended, or any other federal, state or local statute or ordinance relating to Plaintiff's employment, employee benefits, wages or terms and conditions of Plaintiff's employment, or prohibiting discrimination on the basis of age, sex, race, religion, national origin, disability or other protected category.

        c.      <u>Special Release Notification</u>.  Paragraph 5(b) includes a release of all claims under the Age Discrimination in Employment Act ("ADEA") and, therefore, pursuant to the requirements of the ADEA, Named Plaintiff acknowledges and understands the following: (a) you have been advised that this release includes, but is not limited to, all claims under the ADEA arising up to and including the date of execution of this release; (b) that you have been advised to consult with an attorney and/or other advisor of your choosing concerning your rights and obligations under this release; (c) that you have been advised to consider fully this release before executing it; (d) that you have been offered ample time and opportunity, in excess of twenty-one (21) days, to do so; and (3) that this release shall become effective and enforceable seven (7) days following your execution of this Agreement, during which seven (7) day period you may revoke your acceptance of this Agreement by delivering written notice to:

> Chris Michalik, Esq.
> McGuireWoods LLP
> 800 E Canal Street
> Richmond, Virginia 23219

Named Plaintiff acknowledges and agrees that if he revokes this Agreement, it will not be effective or enforceable and that he will not be entitled to receive any payment(s) set forth in this Agreement.

        d.      A release given by the administrator or other legal representative of the estate of a deceased Plaintiff shall be the equivalent of a release given by such Plaintiff, for purposes of this Agreement.  The settlement payment of any deceased Plaintiff shall be made to such Plaintiff's estate if the estate executes a release.  The parties will cooperate in arranging the substitution of any deceased Plaintiff's estate in the Lawsuit in lieu of the deceased Plaintiff.

7.      <u>Confidentiality</u>.  Plaintiffs agree to maintain confidentiality with respect to the settlement and amount of all individual and collective settlement payments.  Plaintiffs may disclose their individual settlement amounts to spouses, domestic partners, attorneys, tax advisors, financial planners, taxing authorities, and/or in response to subpoena or court order or as may be otherwise required by law.  Plaintiffs agree not to talk about the settlement of this Litigation or any portion of the Lawsuit which is not public record.  If someone inquires about the Litigation's resolution, Plaintiffs will state only that the case "was resolved."  Counsel for both parties will treat the settlement and its terms as confidential to the maximum extent permitted by law and will not make press statements or releases or otherwise characterize the settlement or its terms other than to their

respective clients. Counsel for Plaintiffs will not oppose in camera review of this Agreement by the Court without filing the Agreement in open court.

8.     Other Actions. The Parties each acknowledge for themselves that: they have not filed any legal proceeding(s) against each other (other than the one referenced in the Recitals); they are the sole owner of any claims released herein; they have not transferred any such claims to anyone else; and, they each have the full right and power to grant the releases and agreements in this Agreement. In the event of any further proceedings based upon any released matter other than enforcement of this Agreement, each party expressly acknowledges and agrees that no party shall have any further monetary or other obligation of any kind to each other.

9.     Effect of Non-Approval. In the event that the Agreement is not approved by the Court for any reason in the form submitted by the Parties, the Parties will attempt to address any concerns raised by the Court and resubmit a revised settlement agreement if possible.

10.    Miscellaneous

   a.   Plaintiffs shall refrain from all conduct, verbal or otherwise, that disparages or damages or could disparage or damage the reputation, goodwill, or standing in the community of Capital One.

   b.   In the event that the Stipulation is not substantially approved by the Court or the settlement set forth in this Agreement is terminated, cancelled, declared void or fails to become effective in accordance with its terms, or if the Dismissal does not become Final, or to the extent cancellation otherwise occurs pursuant to the terms of this Agreement, the Settling Parties shall resume the Litigation at that time as if no Agreement had been entered. In such event, the terms and provisions of the Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any Dismissal or order entered by the Court in accordance with the terms of the Agreement shall be treated as vacated, *nunc pro tunc*.

   c.   The Parties (i) acknowledge that it is their intent to consummate this Agreement; and (ii) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Agreement. The Parties agree that such cooperation will include petitioning the Court to approve this Agreement and uphold its terms.

   d.   The Parties agree that the amounts paid in Settlement and the other terms of the settlement were negotiated in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

   e.   All of the Exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

    f. The Agreement may be amended or modified only by a written instrument signed by or on behalf of each Party or its respective successors-in-interest.

    g. The Agreement constitutes the entire agreement among the Parties hereto and no representations, warranties or inducements have been made to any party concerning the Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs and attorneys' fees.

    h. Plaintiffs' Counsel, on behalf of the Named Plaintiff, is expressly authorized to take all appropriate action required or permitted to be taken by the Plaintiffs pursuant to this Agreement to effect its terms.

    i. The Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

    j. The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto; but this Agreement is not designed or intended to create any third party beneficiaries.

    k. The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement.

    l. The rights and obligations of the parties to the Agreement shall be construed and enforced in accordance with, and governed by, the law of the Commonwealth of Virginia without regard to its conflict of laws rules.

    m. If any provision of this Agreement is held invalid or unenforceable for any reason, the invalidity shall not nullify the validity of the remaining provisions of this Agreement. If any provision of this Agreement is determined by a court to be invalid or unenforceable as written, then such provision shall, if possible, be modified and reformed to the degree necessary to render it valid and enforceable.

    n. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either party. No party shall be deemed the drafter of this Agreement. The parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the parties and their counsel. Each party and their counsel cooperated in the drafting and preparation of the Agreement.

**APPROVED AS TO FORM FOR RECOMMENDATION TO PLAINTIFFS AND FOR COURT APPROVAL:**

*Rowdy Meeks*  3/12/2020
—8A025DBAA3414D1…

Rowdy Meeks, Counsel for Plaintiffs

*Jeffrey Davis* (signature)  3/12/2020
—A1049DDBE4F54FB…

Jeffrey Davis

*Christopher Michalik* (signature)

Christopher Michalik, On Behalf of Capital One

*Christopher Michalik* (signature)

Christopher Michalik, Counsel for Defendant

**GZJ KDKV'3**

| Worker | Emp ID | Individual Collective Member's Share | % of Total Settlement |
|---|---|---|---|
| Charles Snyder-Richard | 533598 | $9,543.59 | 2.583% |
| Elias E. de los Santos | 512460 | $7,934.15 | 2.147% |
| David Burrows | 546406 | $7,919.86 | 2.144% |
| Cindy A Tuttle | 502434 | $7,373.27 | 1.996% |
| Joe Stewart | IHE534 | $7,168.08 | 1.940% |
| Juan Tovar | 509180 | $6,851.98 | 1.855% |
| Jonathan Micah Sarver | 515915 | $6,378.87 | 1.727% |
| Carol Liyi Lei | 534936 | $6,169.97 | 1.670% |
| Aaron Pisano | 543835 | $5,875.68 | 1.590% |
| Andrew Taylor | 512004 | $5,721.06 | 1.548% |
| Eddie Jackson | 517217 | $5,406.62 | 1.463% |
| Doug Andel | OTL629 | $5,374.91 | 1.455% |
| Arsen Giller | 535933 | $5,332.27 | 1.443% |
| Michael Marchelos | 490699 | $5,250.19 | 1.421% |
| Paul Maximovich | 533060 | $4,688.83 | 1.269% |
| Tamara Dawn Hahn | CEY777 | $4,616.91 | 1.250% |
| David Schlansky | 544087 | $4,594.92 | 1.244% |
| David Betbadal | 527399 | $4,459.07 | 1.207% |
| Jose Alvarez | 521551 | $4,354.71 | 1.179% |
| Douglas Washor | 533448 | $4,351.46 | 1.178% |
| Jon Goldberg | 538630 | $4,336.91 | 1.174% |
| Brian Roblyer | 523538 | $4,301.99 | 1.164% |
| David Baker | 512002 | $4,288.77 | 1.161% |
| Adam Pasqua | 525015 | $4,240.50 | 1.148% |
| Elissa Ogens | 494403 | $4,190.00 | 1.134% |
| Jamie Vider | 390959 | $4,095.79 | 1.109% |
| Scott Alan Morrison | 501390 | $4,095.26 | 1.108% |
| Christopher Campbell | 498644 | $3,920.99 | 1.061% |
| Paul Dours | 525007 | $3,901.51 | 1.056% |
| Warren Julbe | 498652 | $3,784.65 | 1.024% |
| Christopher A Wallace | 383671 | $3,672.16 | 0.994% |
| Donald Dill | 481795 | $3,614.67 | 0.978% |
| Brad E. Andrews | YGF467 | $3,583.27 | 0.970% |
| WILLIAM CRENSON | 533317 | $3,374.11 | 0.913% |
| Eric Rounds | 474316 | $3,307.64 | 0.895% |
| Justin Silberman | 473497 | $3,275.48 | 0.887% |
| Wolfgang Cajina-Ledezma | 318465 | $3,240.18 | 0.877% |
| Jeff T Davis | 492209 | $3,221.48 | 0.872% |
| Karen Bishop | 536443 | $3,185.91 | 0.862% |
| Ryan Obermeier | 532181 | $3,159.98 | 0.855% |
| Christina Grimes | 534922 | $3,140.49 | 0.850% |
| Jeffrey Sosnicki | 499604 | $2,874.32 | 0.778% |
| George Zygmont | 546405 | $2,753.63 | 0.745% |
| Efren Olvera | 187406 | $2,738.43 | 0.741% |
| Devin Boyle | 478338 | $2,704.77 | 0.732% |
| Sofia Velazquez | 486383 | $2,677.21 | 0.725% |
| Anita K. Johnson | 504421 | $2,667.43 | 0.722% |
| Deanne Baron | 520739 | $2,631.59 | 0.712% |
| Hugo Ortiz | 393527 | $2,584.14 | 0.699% |
| Justin Philip | 540958 | $2,573.15 | 0.696% |
| Mahmut Aydin | 533242 | $2,514.64 | 0.681% |
| Dee Weber | 556405 | $2,474.82 | 0.670% |
| Karen Nieman | 513195 | $2,450.43 | 0.663% |
| David Chong | 528216 | $2,433.36 | 0.659% |

| Name | ID | Amount | Percent |
|---|---|---|---|
| Christopher Owens | 541255 | $2,393.01 | 0.648% |
| Christopher Bradley Lunn | 318148 | $2,389.36 | 0.647% |
| Mark Considine | 572797 | $2,389.36 | 0.647% |
| Adil Usufzai | 505745 | $2,324.96 | 0.629% |
| Damien Ha | 546781 | $2,319.09 | 0.628% |
| Mike Mitchell | 547833 | $2,299.51 | 0.622% |
| Scott Blyth | 497781 | $2,295.62 | 0.621% |
| David Saladino | 515386 | $2,134.81 | 0.578% |
| Alberto Vernacchio | 476046 | $2,100.83 | 0.569% |
| Elizabeth Nudo | 315415 | $2,067.27 | 0.560% |
| Santiago Favela | 515719 | $2,038.00 | 0.552% |
| Rachael Ringold | 392822 | $1,985.86 | 0.537% |
| Jaime Dejesus | 532447 | $1,942.97 | 0.526% |
| Roderick Bennett | 477284 | $1,937.55 | 0.524% |
| Nicholas Jordan | 541256 | $1,935.47 | 0.524% |
| John Oaks | 403682 | $1,929.45 | 0.522% |
| Andy Hoover | 553822 | $1,894.21 | 0.513% |
| Brady Barras | 527689 | $1,851.80 | 0.501% |
| Samson uko | 546055 | $1,820.83 | 0.493% |
| Kyle Zotter | 573313 | $1,815.95 | 0.492% |
| Sandra Bentz | 390956 | $1,813.74 | 0.491% |
| Anthony Smith | DAE023 | $1,812.65 | 0.491% |
| Elissa Goldes | 511809 | $1,772.37 | 0.480% |
| Tresven Whitlock | 542125 | $1,727.29 | 0.468% |
| Brendan McClarnon | 503672 | $1,713.24 | 0.464% |
| Michelle England | 520530 | $1,701.36 | 0.460% |
| David Metzheiser | 542182 | $1,651.60 | 0.447% |
| James Castellaw | 557472 | $1,645.20 | 0.445% |
| Sandra Kamberogiannis | 517216 | $1,626.01 | 0.440% |
| Margherita Popolizio | 209577 | $1,624.07 | 0.440% |
| Derek Eckles | 551913 | $1,619.88 | 0.438% |
| Oswaldo Pinilla | 509882 | $1,570.33 | 0.425% |
| Marc Franchi | 518439 | $1,562.69 | 0.423% |
| Elliot Dorbian | 515274 | $1,548.36 | 0.419% |
| Gerry DAscoli | 551728 | $1,506.00 | 0.408% |
| Joseph Bufalini | 541906 | $1,492.81 | 0.404% |
| William Bloom | 515620 | $1,470.37 | 0.398% |
| Jacqueline Ferguson | 380255 | $1,441.02 | 0.390% |
| Bernard Gumucio | 486659 | $1,425.75 | 0.386% |
| Ronnie Wilson | 551381 | $1,386.97 | 0.375% |
| Donna Sheridan | 496676 | $1,383.47 | 0.374% |
| Michael Nechman | 511747 | $1,361.93 | 0.369% |
| Demetrios Jangarathis | 561948 | $1,357.83 | 0.368% |
| Angel Rivera | 369171 | $1,344.08 | 0.364% |
| Cordell Reynolds | 554454 | $1,313.56 | 0.356% |
| Steve Ceretto | 565590 | $1,264.56 | 0.342% |
| David Johnson | 508233 | $1,235.90 | 0.335% |
| Iris Sigismondo | 501470 | $1,230.83 | 0.333% |
| Zina James | 269301 | $1,224.25 | 0.331% |
| Beverly Kelley | 528396 | $1,221.34 | 0.331% |
| TIMOTHY SHELTON | 531470 | $1,218.08 | 0.330% |
| Allen Harry | 503408 | $1,178.14 | 0.319% |
| Brad Cloud | 520503 | $1,165.40 | 0.315% |
| Patrick Miller | 510030 | $1,159.93 | 0.314% |
| Thomas Petsche | 516599 | $1,148.19 | 0.311% |
| Michael Pierce | 551198 | $1,117.23 | 0.302% |
| Ignacio Barrientos | 553576 | $1,114.68 | 0.302% |
| Cassandra Campbell | 502270 | $1,087.16 | 0.294% |

| Name | ID | Amount | Percent |
|---|---|---|---|
| Jean Dowd | 234958 | $1,084.07 | 0.293% |
| Michael Rogers | 553437 | $1,078.81 | 0.292% |
| Anthony Bikowski | 518410 | $1,075.93 | 0.291% |
| Scott Krumpholc | 496586 | $1,064.85 | 0.288% |
| Denise Stark | 493309 | $1,061.44 | 0.287% |
| Tolga Cinar | 546244 | $1,050.60 | 0.284% |
| Paul Boudwin | 521288 | $1,041.54 | 0.282% |
| Charmaine Seymour | 528393 | $1,038.98 | 0.281% |
| Billy Cevallos | 396881 | $998.30 | 0.270% |
| CHRIS SCHOONMAKER | 561024 | $959.59 | 0.260% |
| Anita George | 558034 | $943.54 | 0.255% |
| Michol Hymes | 522539 | $923.97 | 0.250% |
| Anthony Depietro | 504144 | $921.27 | 0.249% |
| Joseph Summers | 551072 | $918.98 | 0.249% |
| Colleen Stenglein | 511085 | $909.99 | 0.246% |
| Jennifer Aguirre | 520246 | $899.79 | 0.244% |
| MICHAEL SAUNDERS | 555812 | $896.56 | 0.243% |
| Karen Pauls | 524311 | $892.77 | 0.242% |
| Jeffrey Feldman | 393426 | $857.72 | 0.232% |
| David Groothuis | 511843 | $839.78 | 0.227% |
| Patricia Lavigne | 550664 | $838.67 | 0.227% |
| Thomas Soltis | 527408 | $829.72 | 0.225% |
| Ernest Hackworth | 523986 | $808.44 | 0.219% |
| Reenae Guillory | 550233 | $794.18 | 0.215% |
| Charmaine Ford | 555626 | $788.42 | 0.213% |
| Chris Bartlett | 564310 | $778.64 | 0.211% |
| Anthony Urciuoli | 566175 | $761.79 | 0.206% |
| Ariel Szanto | 498310 | $749.14 | 0.203% |
| Nasiba Alami | 542977 | $703.19 | 0.190% |
| David Butynes | 543655 | $694.50 | 0.188% |
| Joseph Kahn | 402005 | $678.93 | 0.184% |
| Robert Wunderlich | 517964 | $663.22 | 0.180% |
| Jerry Martinez | 523070 | $650.18 | 0.176% |
| Roberto Ribadeneyra | 483226 | $630.58 | 0.171% |
| Figaro Dezil | 554203 | $628.44 | 0.170% |
| John Woodburn | 517835 | $618.64 | 0.167% |
| Deanna Perkins | 495544 | $590.90 | 0.160% |
| Misty Bayles | 554993 | $584.61 | 0.158% |
| JoAnn Budnick | 496254 | $562.48 | 0.152% |
| Dana Banes | 549367 | $555.70 | 0.150% |
| Lazara Meneses | 511373 | $507.78 | 0.137% |
| Robert B Withers | 547967 | $479.03 | 0.130% |
| Seda Kocharian | 389859 | $430.96 | 0.117% |
| Brian Walbert | 492815 | $418.05 | 0.113% |
| Peter Holsinger | 502165 | $397.02 | 0.107% |
| Christopher Wash | 515420 | $373.39 | 0.101% |
| Keith O'Reilly | 508124 | $359.02 | 0.097% |
| Steven Gonzalez | 575867 | $351.57 | 0.095% |
| Julie Cappelli | 393963 | $344.84 | 0.093% |
| Christopher Kady | 503067 | $339.59 | 0.092% |
| Beom Seok Kim | 491435 | $337.50 | 0.091% |
| Stephen Bacci | 570387 | $321.30 | 0.087% |
| Jeffrey Novak | 313224 | $311.12 | 0.084% |
| Amy Trammell | 498314 | $300.60 | 0.081% |
| Jeffrey Stoddard | 329772 | $289.07 | 0.078% |
| James Jessee | 396486 | $266.87 | 0.072% |
| Dale Ngo | 515416 | $253.05 | 0.068% |
| Eric Abner | 535293 | $251.64 | 0.068% |

| | | | |
|---|---|---|---|
| Roberto Romero | 511350 | $238.52 | 0.065% |
| Kenneth Lombardi | 506095 | $232.81 | 0.063% |
| Angelo Falto | 541067 | $204.55 | 0.055% |
| Craig Brearey | 504332 | $203.43 | 0.055% |
| Germaine Riley | 396093 | $202.70 | 0.055% |
| Matthew Richardson | 496134 | $200.79 | 0.054% |
| Joshua Trantham | 521811 | $200.53 | 0.054% |
| Lowell Sterling | 504250 | $200.05 | 0.054% |
| Cesar Zelaya | 481520 | $200.04 | 0.054% |
| Kane North | 485415 | $200.04 | 0.054% |
| Patricia Bibiana Kemesies | MEV287 | $200.04 | 0.054% |

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **JEFFREY DAVIS, on Behalf of Himself and All Others Similarly Situated,** | § § § |
| *Plaintiff,* | § § |
| **V.** | § § § |
| **CAPITAL ONE HOME LOANS LLC and CAPITAL ONE NATIONAL ASSOCIATION,** | § § § § § |
| *Defendants.* | § |

**OFFICIAL NOTICE FOR
PARTICIPATION IN SETTLEMENT**

**To:**

**[NAME]**
**[ADDRESS]**
**[CITY, STATE, ZIP]**

**Please be advised that because you submitted a timely Consent to Become a Party Plaintiff in this lawsuit, you are entitled to a payment from the settlement of this suit. A settlement check payable to you is enclosed. Read this entire Notice before signing and cashing the check.**

**A federal court authorized this Notice. This is not a solicitation from a lawyer.**

☐   This Notice is directed to any individual who Capital One employed as a Mortgage Loan Officer and/or in Home Equity Sales (collectively as "MLOs"), and who timely filed a Consent to Become a Party Plaintiff in this lawsuit.

☐   Plaintiff Jeffrey Davis is a former MLO who sued Capital One alleging that it failed

10

☐ to pay him and other similarly-situated MLOs all overtime compensation due. Plaintiff filed the lawsuit as a collective action under the federal Fair Labor Standards Act ("FLSA").

☐ Capital One has denied the allegations and asserts that MLOs were compensated correctly under the law.  Nevertheless, the Parties have agreed to settle this dispute for the purpose of avoiding further disputes and litigation with its attendant risk, expense, and inconvenience.  The Court has not made any ruling on the merits of the claims and no party has prevailed in this action. However, the Court has reviewed and approved the settlement and this Notice.

☐ The settlement monies are being used to pay MLOs who joined this case, and to pay attorneys' fees, a service award for Plaintiff Davis, litigation costs, and the expense of administering the settlement.

☐ Although it denies the allegations, Capital One is encouraging all MLOs to participate in the settlement and accept their settlement payment.

☐ Under the allocation formula created by the settlement, you are being offered the enclosed settlement payment of $_____.  This amount is based on the number of weeks in which you worked as a MLO during the relevant time period and whether you received severance benefits when you left Capital One.

☐ Neither FLSA Counsel nor Capital One make any representations concerning the tax consequences of your settlement payment.  You are advised to obtain personal tax advice.

☐ These rights and options are explained more fully below as the Parties agreed to in their settlement.

## BASIC INFORMATION

### 1. Why did I receive this Notice and a settlement check?

Capital One's records show that you worked as a MLO in one or more work weeks during the relevant time period.  You also submitted a timely Notice of Consent to become a Party Plaintiff in this lawsuit.  Other like MLOs shall receive payments on a similar basis.

You are receiving this Notice because you have a right to know about the settlement of this collective action lawsuit.

11

Along with this Notice, you are receiving a settlement check. By cashing that check you will release claims against Capital One and its affiliates as explained in Paragraph 9 below.

| 2. | What is this lawsuit about? |
|---|---|

The lawsuit alleges that Capital One did not pay MLOs certain overtime compensation due them in violation of federal law.

Capital One denies these allegations, and maintains that it paid MLOs in compliance with all wage laws at all times.

The Court has not made any ruling on the merits of the claims or defenses, and no party has prevailed in this action.

| 3. | What is a collective action? |
|---|---|

In a "collective action," one or more individuals called "Named Plaintiffs" sue on behalf of other individuals who may have similar claims. However, the individuals who have similar claims do not become part of the collective action unless they opt-in, or agree to join the collective action. You agreed to join the collective action when you filed a timely Consent to Become a Party Plaintiff and you are now being offered the opportunity to participate in the settlement of this lawsuit by cashing the enclosed settlement check.

| 4. | Why is there a settlement? |
|---|---|

The Court did not decide in favor of Plaintiff or Capital One, and neither party prevailed. The parties agreed to a settlement to avoid further disputes and the risk, expense, and inconvenience of litigation. Plaintiff and his attorney believe that this settlement is a good outcome for all individuals who decide to participate in the settlement.

**WHO IS IN THE SETTLEMENT**

| 5. | How do I know if I will be included in the Settlement? |
|---|---|

You are receiving a settlement check because you submitted a timely Consent to Become a Party Plaintiff. If you cash the settlement check no later than [INSERT DATE], you will be bound by the settlement and you will be releasing claims as described in

12

Paragraph 9 below and as is more fully described in the Collective Action Settlement Agreement filed with the Court.

### THE SETTLEMENT BENEFITS – WHAT YOU GET

**6.     What does the Settlement provide?**

Capital One has agreed to pay up to $700,000.00 into a fund to be divided among you and the other eligible MLOs after the payment of all costs and legal fees of the Plaintiff including a Service Award for Plaintiff and the costs of administration. The settlement fully resolves and satisfies any claims for attorneys' fees and costs approved by the Court, all amounts to be paid to eligible MLOs, any Court-approved service award to Plaintiff, and the Settlement Administrator's fees and costs. Settlement checks that are not cashed by [INSERT DATE] will be null and void.

**7.     How much is my payment and how was it calculated?**

Based on the allocation formula that has been approved by the Court, you are receiving a settlement check for $_____, half of which is subject to deductions for applicable taxes and withholdings like any other paycheck, and for which you will receive a W-2, and half of which will not be taxed at this time and will be reported on IRS Form 1099. You, however, will be responsible for any taxes owed on the payment for which you receive a Form 1099. The allocation formula takes into account the number of work weeks in which you worked as a MLO during the relevant time period and whether you received severance benefits when you left Capital One. Please understand that your settlement amount is confidential. Thus, you may disclose your settlement payment <u>only</u> to your spouse, domestic partner, attorneys, tax advisors, financial planners, taxing authorities, and/or in response to subpoena or court order or as may be otherwise required by law.

### HOW YOU GET A PAYMENT

**8.     How do I get my payment?**

A check is enclosed. All you have to do is cash the settlement check by [INSERT DATE].

**9.     What am I giving up if I cash the settlement check?**

You are agreeing to the release of claims against Capital One and its affiliates as

13

described in this Paragraph 9 by cashing the check. It also means that all of the Court's orders in this case will apply to you and will legally bind you.

If you worked for Capital One, by cashing this settlement check you are agreeing to this release:

> The Opt-In Plaintiffs shall have fully, finally, and forever released, relinquished, and discharged all any and all "Released Claims" against Capital One, its successors, assigns, affiliates, parents, subsidiaries, officers, directors, insurers, reinsurers, partners, principals, managing directors, supervisors, employees and former employees (collectively the "Released Parties") that accrued during their employment with Capital One relating back to the fullest extent of any applicable federal, state and/or local statutes of limitations and continuing through the date of the negotiation of their respective Settlement Checks or of receipt of an EFT payment for the amount thereof. The "Released Claims" include: all federal, state and local minimum wage, hour, and overtime violation claims of any type, including without limitation for liquidated damages, claims for any type of meal or rest break violations, inaccurate wage statements, unpaid vacation or sick pay or other paid time off wages of any type and related notice violations, derivative claims for unfair competition/business practices and statutory and civil penalties.

By cashing this settlement check, you also agreeing to the following Confidentiality obligations:

> Plaintiffs agree to maintain confidentiality with respect to the settlement and amount of all individual and collective settlement payments. Each Plaintiff's acceptance of the settlement will require that confidentiality regarding the fact and amount of the offer was maintained prior to its acceptance. Plaintiffs who execute the Release and Acceptance of Settlement may disclose their individual settlement amounts to spouses, domestic partners, attorneys, tax advisors, financial planners, taxing authorities, in response to subpoena or court order or as may be otherwise required by law. Individual Plaintiffs will be responsible for any subsequent disclosure by persons to whom they have voluntarily disclosed this confidential information. Plaintiffs agree not to talk about the settlement of this Litigation or any portion of the Lawsuit which is not public record. If someone inquires about the Litigation's resolution, Plaintiffs will state only that the case "was resolved."

## THE LAWYERS REPRESENTING YOU

| 10. | Do I have a lawyer in this case? |
|---|---|

By signing and returning a Consent to Become a Party Plaintiff you agreed that Rowdy Meeks Legal Group LLC will represent you and the other eligible MLOs, and you authorized that firm to negotiate a settlement on your behalf. These lawyers are called "FLSA Counsel." You will not be charged for these attorneys. You do not need to retain your own attorney to participate in the settlement.

| 11. | What other payments are coming out of the settlement fund? |
|---|---|

A. Attorneys' Fees and Costs. The Court has approved the payment of $296,653.98 from the gross settlement fund to FLSA Counsel for payment of attorneys' fees and out-of-pocket expenses FLSA Counsel incurred in litigating this case. These fees and expenses compensate FLSA Counsel for investigating the facts, litigating the case, and negotiating and finalizing the settlement.

B. Service Award to Named Plaintiff, Jeffrey Davis. The Court has approved the payment of $25,000.00 from the gross settlement fund to the Named Plaintiff to recognize the risk he took and his service to the collective action. Named Plaintiff will receive this payment in addition to a payment under the allocation formula.

C. Settlement Administration. The fee for the Settlement Administrator also will be paid from the settlement fund.

## FOR MORE INFORMATION

| 12. | How do I get more information about the Settlement? |
|---|---|

This Notice summarizes the proposed settlement. You should contact FLSA Counsel Rowdy B. Meeks if you have questions regarding this Notice or the Settlement. Here is his contact information:

Rowdy B. Meeks
Rowdy Meeks Legal Group LLC
8201 Mission Road, Suite 250
Prairie Village, KS 66208
(913) 766-5585
Rowdy.Meeks@rmlegalgroup.com

You may also contact the Settlement Administrator at:

**NAME AND CONTACT INFO OF SETTLEMENT ADMINISTRATOR**

DATED: _____, 2020

16